UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WATERBURY HOMEOWNERS ASSOCIATION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-00088-SEB-TAB |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This lawsuit arises out of a severe fire that caused large-scale loss at a multiunit condominium complex in Indianapolis, Indiana (hereinafter, the "Property"). Plaintiff Waterbury Homeowners Association, Inc. ("Waterbury") filed a claim under its insurance policy (the "Policy") issued by Defendant State Farm Fire and Casualty Company ("State Farm"). As the claim progressed, the parties encountered a disagreement concerning the scope of coverage vis-à-vis the concrete slab foundation. This litigation ensued. Waterbury asserts claims against State Farm for breach of contract and breach of the duty of good faith and fair dealing, pursuant to Indiana law. Now before the Court is State Farm's Motion for Partial Summary Judgment on the claim for breach of the duty of good faith and fair dealing, dkt. 29, as well as its Motion to Strike Waterbury's Surreply, dkt. 38. For the reasons stated below, these motion are **DENIED**.

**LEGAL STANDARD**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the court

what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "Summary judgment is not a time to be coy." *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). We do not, by contrast, weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

## BACKGROUND

### I. The Policy

Waterbury purchased a residential community association insurance policy from State Farm, effective from July 5, 2022, through July 5, 2023. Dkt. 29-1 at 1, 2. The Policy provided, in relevant part, that State Farm would "pay for accidental direct physical loss to th[e] covered Property at the premises," consistent with additional terms in the Policy. *Id.* at 14. In this litigation, the parties do not dispute that the Property and the loss were covered by the Policy.

### II. The Loss & State Farm's Initial Evaluation of the Claim

On May 31, 2023, a severe fire occurred at the Property, which rendered four condominium units uninhabitable and displaced the respective homeowners. Barnes Dep. 18:15–23, dkt. 29-3; Dkt. 29-2 at 2. Waterbury promptly filed a claim with State Farm, who assigned adjuster **Greg**

**Beghtel** ("Mr. Beghtel") to oversee the claim. Barnes Dep. 12:3–6, dkt. 29-3. Mr. Beghtel was on a team that typically handled largescale losses, like that inflicted by the fire here. *Id.* at 17:8–10. Mr. Beghtel conducted an initial inspection of the Property on June 1, 2023, the day immediately after the fire, and a second inspection on June 13, 2023, with State Farm's **Keith Weisner** ("Mr. Weisner"). *Id.* at 102:20–22.

On June 30, 2023, **James Taylor** ("Mr. Taylor") from Prevail Public Adjusters contacted State Farm to inform it that he would be representing Waterbury in advancing its insurance claim. Dkt. 29-5. Meanwhile, Waterbury also retained **Apex Home Solutions** ("Apex") as its general contractor to restore the Property. Gamlem Decl. ¶ 5, dkt. 32-2; Barnes Dep. 27:17–23, dkt. 29-3.

By July 2023, State Farm and Waterbury evidently agreed that a complete demolition of the building structures was necessary. Barnes Dep. 70:5–10, dkt. 29-3. On July 27, 2023, Mr. Beghtel contacted Apex's **David Wilson** ("Mr. Wilson") by email with follow-up questions concerning a demolition estimate prepared by Apex. Dkt. 29-6. Specifically, Mr. Beghtel asked for clarification on an aspect of the demolition proposal "indicat[ing] [that] the estimate was based on an average of 3 sub[-]bids." *Id.* at 2. In order to "reconcile [the] estimate appropriately on [his] end," Mr. Beghtel requested copies of the subcontractor bids utilized in Apex's underlying calculations. *Id.*

Mr. Wilson responded the following day, on July 28, 2023, stating that he had "solicited and received bids from licensed wrecking contractors to clear the building site . . . to rebuild the structure." *Id.* Although Mr. Wilson invited Mr. Beghtel "to take [the] time to locate, contact, coordinate, and meet other wrecking contractors for bids to see of [sic] comparable pricing," Mr. Wilson did not reveal the details of the underlying bids received by Apex. *Id.* Mr. Beghtel replied

later that day and explained that disclosing the subcontractor bids could "help speed up the process of approval on [Apex's] quote." *Id.*

**III. The Concrete Slab Foundation**

By mid-August 2023, a scope-of-work dispute had emerged between the parties concerning the structural integrity and potential demolition of the concrete slab foundation. Barnes Dep. 70:11–16, dkt. 29-3. Waterbury, through Apex and Mr. Taylor, maintained that the slab had been irreparably compromised by the fire and thus required complete demolition and replacement. *Id.* at 71:10–72:23. To that end, Waterbury expressly requested that State Farm conduct structural integrity testing, such as core sampling and compressive strength testing, before conclusively deciding whether to include or exclude costs relating to the slab foundation in its claim estimate. *Id.* at 73:7–74:4. For approximately one year, from the summer of 2023 through July 15, 2024, State Farm adhered to its position that demolition of the slab was not necessary and thus declined to incorporate such costs in its claim estimate(s). *See* dkt. 29-7 at 4.

When Waterbury initially related its concerns about the concrete slab in the summer of 2023, State Farm approved the hiring of a third-party engineer to inspect the slab and opine as to whether replacement was necessary. Barnes Dep. 75:5–19, dkt. 29-3. On August 16, 2023, Mr. Beghtel emailed Mr. Taylor with updates about State Farm's ongoing investigatory efforts. *See* dkt. 29-7. Mr. Beghtel noted that State Farm's demolition contractor, **Casey-Bertram Construction** ("Casey-Bertram"), had advised that "the City of Indianapolis will likely require a building plan be submitted prior to issuing a permit for the demo[lition]." *Id.* at 4. In Mr. Beghtel's view, the need for a building plan did not necessarily "result in the need to remove the slab and foundation," however. *Id.* Nevertheless, Mr. Beghtel stated,

> State Farm is willing at our cost to hire a structural engineer to determine whether the slab and foundation are damaged beyond repair and require removal. State Farm

> is willing to hire the engineer prior to demo of the structure, or after the main structure has been removed and the slab remains. It will be easier to inspect the slab after the building demolition, but if you would like us to proceed with hiring an engineer prior to any demolition, State Farm is willing to do this.

*Id.*

On August 22, 2023, State Farm retained U.S. Forensic engineer **Tim Lee** ("Mr. Lee") to evaluate whether the damage to the slab foundation warranted its removal and replacement; and whether the local building enforcement division would allow a rebuild using the existing slab. Barnes Dep. 120:19–121:15, dkt. 29-3; *see generally* dkt. 32-3 (engagement letter). The engagement letter imposed a requirement that Mr. Lee seek (and obtain) State Farm's authorization before "performing additional services" (e.g., core sampling testing) that he "believed [to be] necessary to address the question(s) at issue." Dkt. 32-3 at 2; Barnes Dep. 120:17–122:19, dkt. 29-3.

On August 30, 2023, prior to the start of demolition, Mr. Lee conducted a visual inspection of the Property, which Mr. Taylor also attended. Lee Aff. ¶ 4, dkt. 29-8; Barnes Dep. 89:24–90:1, dkt. 29-3. *See also* dkt. 29-9 at 1 (September 20, 2023, letter from State Farm to Waterbury indicating, *inter alia*, that "State Farm proceeded with the engineer evaluation prior to demolition" "[a]t the request of James Taylor"). On September 11, 2023, Mr. Lee issued his report, wherein he explained that "[c]oncrete exposed to temperatures greater than approximately 570 degrees often turns a shade of pink. At much higher temperatures, which are not commonly encountered during typical structure fires, the concrete can turn back to a light gray and then eventually to a yellowish-brown color." Dkt. 29-8 at 10. Continuing, Mr. Lee advised that pink concrete is "generally considered structurally damaged" and should not be reused. *Id.*

The photos of the Property, which Mr. Lee included in his report, reveal that the concrete slabs were pink-hued:





Dkt. 29-8 at 16–17 (Photographs 12 & 13). In a photograph captured by Mr. Taylor, the concrete's discoloration is even more apparent:



Dkt. 32-4 at 3 (Figure #1).

Notwithstanding the concrete slab's observable condition, Mr. Lee concluded—based solely on his visual inspection—that "the concrete slab foundation was not damaged as a result of the fire" and that "the concrete slab should be reused during the reconstruction of the building." Dkt. 29-8 at 6; Barnes Dep. 96:10–97:4, dkt. 29-3.

On September 18, 2023, Mr. Taylor requested that State Farm amend its decision regarding the slab/foundation of the main building damaged by the fire. Dkt. 29-9 at 1. In a September 20, 2023, response, State Farm stood by Mr. Lee's conclusions and declined to revise its demolition

estimate to include the cost of removing the concrete foundation. *Id.* Nevertheless, State Farm did express its willingness to "to review additional information to re-evaluate [its] claim decisions." *Id.* Continuing, State Farm stated that, if Waterbury chose "at [its] expense to engage another qualified engineer to evaluate the slab/foundation, [State Farm would] take their findings under consideration." *Id.* "In addition, once demo is complete the slab can be evaluated again for damage." *Id.*

On October 10, 2023, Waterbury's architect, **Brian Young** ("Mr. Young"), penned a letter to State Farm "requesting a core sample of the foundation, to insure [sic] the structural integrity of the concrete in the slab and foundation," since "[t]here appear[ed] to have been no physical testing of the existing foundation/slab" and since "[c]ore testing w[ould] be needed" in order to draw up the blueprints necessary to obtain a permit from the City of Indianapolis. Dkt. 32-5. Without such testing, Waterbury "was forced to either complete multiple sets of plans" to account for uncertainty regarding the concrete slab "or . . . incur the cost of testing to determine whether it was feasible to reuse the slab." Wilson Decl. ¶¶ 9–11, dkt. 32-1.

Mr. Lee reviewed Mr. Young's letter and advised State Farm that "core sampling was not necessary at that time because during [his] August 30, 2023, inspection of the Property [he] did not observe: (1) physical evidence of fire or heat damage to the concrete slab; or (2) damage to the floor coverings on top of the concrete slab." Lee Suppl. Aff. ¶ 6, dkt. 35-1. According to Mr. Lee, Mr. Young's letter was unpersuasive because it "did not include any physical evidence supporting his claim that core sampling would be beneficial, it did not cite any code requirements that would mandate core sampling, and it otherwise did not offer a rational basis for the core sampling request." *Id.* ¶ 8.

On October 31, 2023, State Farm informed Waterbury as follows:

> After considering all facts, circumstances, and evidence from on-site inspections and expert opinions, it is our position that the slab does not need to undergo core testing at this time. Further, our position remains that the slab is not damaged from the loss insured and does not need to be demolished. As previously communicated, we are willing to reevaluate the slab once demolition of the structure is complete and are open and willing to review any and all information you may have in regard to this matter.

Dkt. 35-2; *e.g.*, Barnes Dep. 98:25–99:5, dkt. 29-3.

Meanwhile, on October 17, 2023, Mr. Beghtel completed his initial estimate for rebuilding the four damaged units, which estimate amounted to $957,830.62. Dkt. 29-11 at 3. The next day, State Farm issued a $645,055.72 insurance payment to Waterbury. Barnes Dep. 109:17–24, dkt. 29-3.

**IV. Subsequent Concrete Testing & State Farm's Revised Estimate**

On January 6, 2024, Mr. Taylor related to State Farm a December 21, 2023, report from **CTL Group** ("CTL"), which had conducted core testing of the concrete slab and found that the slab lacked the requisite strength to support rebuilding the condominium units. Dkt. 29-13. Two days later, on January 8, 2024, State Farm asked Mr. Lee to review CTL's test results and to provide an opinion. Lee Suppl. Aff. ¶¶ 11–12, dkt. 35-1. As a part of that review, Mr. Lee conducted a second inspection of the Property, albeit not until June 2024, approximately six months later. *Id.* ¶ 12; Lee Aff. ¶ 4, dkt. 29-8.

Meanwhile, on May 22, 2024, Mr. Taylor provided State Farm with Waterbury's proof of loss as well as an independent estimate of Waterbury's anticipated repair expenses, all of which amounted to a sum total of $1,798,469.73. Dkt. 29-14 at 3. State Farm followed up with Mr. Taylor the next day and requested supporting documentation, such as the bids from Apex's subcontractors, so that State Farm could assess purported concerns about overhead and profits and reconcile its estimate accordingly. Dkt. 29-15 at 2. Mr. Taylor and Apex declined to turn over the subcontractor

bids, which they viewed as proprietary information that neither the Policy nor Indiana law required them to disclose to State Farm. Dkt. 29-15 at 2–3 (June 3, 2024, emails from Mr. Taylor and Apex's representative to Mr. Beghtel).

Demolition commenced on April 1, 2024. Wilson Decl. ¶ 18, dkt. 32-1. Mr. Lee re-inspected the Property on June 14, 2024. Lee Aff. ¶ 4, dkt. 29-8; dkt. 29-8 at 45. In a July 5, 2024, report, Mr. Lee concluded that "the concrete slab require[s] removal and replacement." Dkt. 29-8 at 43. Based on the conclusions in Mr. Lee's second report, State Farm modified its position and agreed with Waterbury that the slab needed to be replaced. Barnes Dep. 99:22–24, dkt. 29-3.

On July 15, 2024, State Farm revised its estimate to include the anticipated cost of fully replacing the concrete slab: State Farm's amended estimate totaled $1,046,047.89. Dkt. 29-17 at 3. The following day, State Farm released $40,632.20 in insurance funds to Waterbury to cover the slab's demolition and replacement costs. Barnes Dep. 108:23–109:4, dkt. 29-3.

## V. State Farm's Training on the Duty of Good Faith

State Farm trains its claim handlers that the duty of good faith and fair dealing requires, *inter alia*, that insurance companies treat their policyholders' interests with equal regard to their own; assist policyholders in the presentation of their claim; select unbiased experts and avoid mischaracterizing evidence to benefit the company; conduct a full, fair, and prompt investigations of claims at the insurance company's expense; evaluate all claims objectively based on all available evidence; and examine and question reports prepared by the companies' expert consultants. Barnes Dep. 52:10–65:6, dkt. 29-3.

## VI. This Lawsuit

On December 12, 2024, Waterbury initiated this lawsuit against State Farm in state court, asserting claims for breach of contract and breach of the duty of good faith and fair dealing. State

Farm timely removed the matter to our court on the basis of diversity jurisdiction. In the Complaint, Waterbury avers that State Farm has unjustifiably withheld substantial Policy benefits in contravention of the loss payment provision as well as its duty of good faith and fair dealing. Waterbury alleges that State Farm's bad faith conduct in adjusting the claim has significantly and unfairly delayed construction efforts, effectively displacing the owners of the condominiums and exposing Waterbury to ongoing harm and potential liability to its members. *See* Gamlem Decl. ¶¶ 8–14, dkt. 32-2.

On January 15, 2026, State Farm moved for partial summary judgment on Waterbury's claim for breach of the duty of good faith and fair dealing. Dkt. 29. Waterbury responded in opposition on February 12, 2026, dkt. 33, and State Farm filed its reply brief on February 26, 2026, dkt. 36. Less than a week later, on March 3, 2026, Waterbury filed a surreply brief, dkt. 37, which State Farm timely moved to strike, dkt. 38. State Farm's Motion for Partial Summary Judgment, dkt. 29, and Motion to Strike, dkt. 38, are fully briefed and ripe for ruling.

## DISCUSSION

### I. Motion to Strike

State Farm's February 26, 2026, reply brief designated two new exhibits: Mr. Lee's February 26, 2026, supplemental affidavit and an October 31, 2023, email exchange between State Farm and Waterbury. Dkt. 35. Waterbury timely filed a surreply brief, which ostensibly addressed State Farm's newly designated evidence. Dkt. 37. State Farm has moved to strike Waterbury's surreply as violative of our Local Rules, which provide, in relevant part, as follows:

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

S.D. Ind. L.R. 56-1(d).

State Farm concedes that Waterbury is permitted under our Local Rules to file a surreply brief addressing the new evidence designated in State Farm's reply brief. According to State Farm, however, the surreply brief violates Local Rule 56-1(d) by rehashing arguments previously set forth in the parties' opening, response, and reply briefs and accordingly should be stricken.

Given that State Farm indisputably did introduce new evidence in its reply brief, we conclude that Waterbury was entitled under our Local Rules to file a surreply brief addressing those issues. That said, Waterbury's surreply brief does clearly exceed the allowable scope by responding to arguments that State Farm properly raised in its opening brief and by rehashing arguments fully set forth in Waterbury's response brief. For these reasons, State Farm's Motion to Strike shall be **granted in part** and **denied in part**. Dkt. 38. Waterbury's surreply brief shall be **stricken** with regard to Sections A, C, D, and E on the grounds that these portions exceed the permissible scope under our Local Rules. However, we shall consider arguments set out in Section B, which pertain to the additional evidence designated by State Farm's reply brief.

## II. State Farm's Motion for Partial Summary Judgment on Waterbury's Claim for Breach of the Duty of Good Faith & Fair Dealing

Indiana law recognizes a cause of action for an insurer's breach of its duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). An insurer fails to comport to its duty of good faith and fair dealing when it: (1) makes an unfounded refusal to pay policy proceeds; (2) causes an unfounded delay in making payment; (3) deceives the insured; or (4) exercises an unfair advantage over the insured to pressure the insured into settling its claim. *Brandell v. Secura Ins.*, 173 N.E.3d 279, 284 (Ind. Ct. App. 2021). The duty is not necessarily breached merely because an insurer denies a claim, even if it is later determined that the insurer breached the contract. *Erie Ins. Co.*, 622 N.E.2d at 520. The duty is also not necessarily breached

by a lack of diligent investigation. *Id.* Rather, the duty is breached when the insurer "denies liability knowing that there is no rational, principled basis for doing so." *Id.*

"[A] successful bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as the knowledge of the lack of a reasonable basis to deny a claim)." *Balzer v. Am. Fam. Ins. Co.*, 805 F. Supp. 2d 618, 624–25 (N.D. Ind. 2011). "Poor judgment and negligence do not amount to bad faith; there must also be the additional element of conscious wrongdoing." *Brandell*, 173 N.E.3d at 284. A finding of bad faith "requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (citation modified). Intent is a factual issue that can be proved by circumstantial evidence. *Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 41 (Ind. Ct. App. 1999) ("[A] final determination of the significance of all of the evidence presented by [the insured] is a question for the jury").[1]

Here, Waterbury alleges that State Farm acted in bad faith by making an unfounded refusal to pay policy proceeds, by causing an unfounded delay in making payment, and by exercising an unfair advantage to pressure Waterbury into settling its insurance claim.[2] In moving for partial summary judgment on Waterbury's claim for breach of the duty of good faith, State Farm argues that its decisions throughout the claim process were rationally based on its own inspections and a

[1] According to State Farm, "bad faith is a legal issue that the Court must resolve, not a factual issue on which [an insured's] claim rests." Dkt. 30 at 10 (alterations in original). As recently explained in a similar case in our district, "[b]ad faith is only a legal issue insofar as the Court must decide if the insured presents sufficient evidence from which a reasonable jury could find that the insurer acted in bad faith. If the insured presents such evidence, the question of bad faith converts into a factual issue that the jury must decide." *Skender v. State Farm Fire & Cas. Co.*, No. 1:22-cv-02054-JMS-KMB, 2024 WL 665219, at *10 n.5 (S.D. Ind. Feb. 16, 2024) (collecting cases).

[2] Waterbury also directs our attention to Indiana's Unfair Claim Settlement Practices Act, which outlines a litany of actions that constitute unfair claim settlement practices under Indiana law. Ind. Code § 27-4-1-4.5. As Waterbury recognizes, § 27-4-1-4.5 does not provide a private right of action, though it does lend credence to Waterbury's allegations against State Farm.

report from Mr. Lee, a third-party engineer. In State Farm's view, Waterbury's allegations reflect a good-faith dispute between the parties about the cost of repairing the fire damage. Likewise, State Farm contends, Waterbury can adduce no evidence that State Farm acted with a culpable state of mind.

Waterbury rejoins that the record evidence, viewed in the light most favorable to the non-moving party, allows for a reasonably jury to conclude that State Farm's refusal to reevaluate Mr. Lee's report (and arguably inconsistent opinions re: replacement of the slab) and/or to authorize additional testing in the face of factual inconsistencies and contrary evidence demonstrate that State Farm breached its duty of good faith and fair dealing. State Farm's ill intent, Waterbury contends, is evinced by State Farm's disregard of credible evidence suggesting that the concrete slab needed to be demolished and its persistent refusal to account for the slab's replacement in its claim estimate.

In reply, State Farm argues that its reasonable reliance upon Mr. Lee's report renders Waterbury's bad faith claim a legal nonstarter. State Farm also maintains that Waterbury has adduced no evidence that State Farm ignored indications that its conclusions about the concrete slab were incorrect. To the contrary, State Farm maintains that it continuously evaluated new information, consulted with its third-party expert engineer, and updated its position as new information became available—all of which demonstrates its good faith towards Waterbury.

The evidence viewed in the light most favorable to Waterbury as the nonmovant requires us to hold that a reasonable jury could conclude that State Farm breached its duty of good faith and fair dealing by initially making an unfounded refusal to pay policy proceeds, by causing an

unfounded delay in making payment,[3] and/or in exercising an unfair advantage over Waterbury. State Farm's Motion for Partial Summary Judgment must and therefore shall be denied.

**A. Rational Basis**

Under Indiana law, "[b]ad faith does not exist when an insurer rests its coverage decision upon a rational basis." *Thorne v. Member Select Ins. Co.*, 899 F. Supp. 2d 820, 826 (N.D. Ind. 2012). In order to prevail on a bad faith claim, a plaintiff must adduce evidence "establishing that there was no reasonable basis to deny the claim." *Id.* at 827.

In this case, State Farm argues that Waterbury's bad faith claim fails as a matter of law because State Farm's decisions throughout the course of evaluating Waterbury's insurance claim were rationally based on its inspections of the Property and the conclusions of a third-party engineer. The existence of *any* rational basis supporting its coverage decisions, State Farm argues, necessarily defeats Waterbury's bad faith claim. *See Hoosier Ins. Co. v. Mangino*, 419 N.E.2d 978, 983 (Ind. Ct. App. 1981). According to State Farm, the parties' disagreement about the scope and cost of repair stems from a good-faith dispute and their competing claim estimates. State Farm's contentions are unavailing, however.

State Farm attributes any alleged delay to purported "inconsistencies" in Waterbury's proposed estimate as well as to Prevail and Apex, who, according to State Farm, refused to provide supplemental information (e.g., subcontractor bids) that State Farm requested as part of its efforts

[3] The parties have not clearly delineated the distinction between Waterbury's theories concerning State Farm's allegedly unfounded refusal to make policy payments and its allegedly unfounded delay in making payment. *See* Dkt. 30 at 14–16 (State Farm addressing the issues together); dkt. 33 at 18–23. State Farm does argue, albeit in a footnote within its reply brief, that "[i]t is unclear how Plaintiff can bring a bad faith claim for unfounded refusal to pay policy proceeds when the insurer has paid for the disputed work in full." Dkt. 36 at 5 n.1. Although we are inclined to agree with State Farm, we do not resolve this outstanding discrepancy at this juncture due to the parties' insufficient briefing on the issue.

to reconcile the parties' competing estimates. State Farm has not, however, established *what* inconsistencies existed in Apex's proposal, nor has it specified the authority, legal or otherwise, impelling Apex (Waterbury's general contractor) to disclose information relating to subcontractor bids and the like. Whether or to what extent the alleged delay in State Farm's processing of Waterbury's insurance claim can be attributed to Waterbury thus remains an open question, which cannot be conclusively resolved on State Farm's bare contentions alone.

Under Indiana law, an insurer's reliance upon the opinions of a third-party expert may suffice to demonstrate that an insurer's coverage denial was rational, thereby defeating a bad-faith claim. *See Fetter v. State Farm Fire & Cas. Co.*, No. 2:22-cv-00486-MPB-MG, 2024 WL 4880891, at *14 (S.D. Ind. Sept. 19, 2024) (finding that State Farm's reliance on an expert report "satisfies the rational, principled basis standard under Indiana law."). Based on this legal principle, State Farm contends that it had a reasonable basis for denying coverage relating to the concrete slab because it relied upon the expertise of Mr. Lee, who inspected the Property and concluded that "the concrete slab should be reused during the reconstruction of the building." Dkt. 29-8 at 6. The mere existence of contradicting evidence, State Farm argues, does not defeat its reasonable, good faith reliance upon Mr. Lee's findings.

To support this argument, State Farm directs our attention to two cases: *Smith v. Nationwide Affinity Insurance Company*, No. 1:15-cv-10-TLS, 2017 WL 3720201 (N.D. Ind. Aug. 28, 2017); and *Thompson Hardwoods, Inc. v. Transportation Insurance Company*, No. NA 0074CHK, 2002 WL 440222 (S.D. Ind. Mar. 15, 2002). In both cases, the plaintiffs' bad faith claims failed as a matter of law in part because the insurance company defendants had rational, principled bases for relying upon their respective third-party experts, who themselves provided reasoned explanations for their opinions. *Smith*, 2017 WL 3720201, at *8 (insurer's expert provided "a reasoned

explanation" supporting his conclusion); *Thompson Hardwoods*, 2002 WL 440222, at *5–6 (insurer's expert similarly provided "a reasoned explanation for his opinion"). In those cases, neither plaintiff adduced evidence "that would allow a reasonable jury to find that the insurer acted unreasonably in relying on [its expert's] findings." *Thompson Hardwoods*, 2002 WL 440222, at *5.

Although *Smith* and *Thompson Hardwoods* are instructive, they do not impel the conclusion that State Farm's unquestioning reliance upon Mr. Lee's opinions was reasonable in this case. To the contrary, the record evidence, viewed in the light most favorable to Waterbury, shows that State Farm repeatedly invoked Mr. Lee's conclusion that the concrete slab could be reused while turning a blind eye to a significant discrepancy within Mr. Lee's report; to wit, Mr. Lee's acknowledgement that pink concrete is, in his words, "generally considered structurally damaged and should be replaced," followed by his otherwise unexplained conclusion that the concrete here, which was observably pink, could be reused. *See* dkt. 29-8 at 3, 6. To that end, the absence of any reasoned explanation from Mr. Lee would allow a reasonable jury to conclude that State Farm generated an unfounded delay in paying Policy proceeds by deferring to Mr. Lee's conclusions and declining Waterbury's repeated requests for additional testing.[4]

The record similarly contains competing evidence concerning whether State Farm exercised unfair control over Waterbury by maintaining control over an investigative step (i.e., concrete sampling) that was central to Waterbury obtaining a permit from the city and proceeding with reconstruction efforts. The record establishes that, in October 2023, Mr. Young, Waterbury's architect, requested core testing in furtherance of his efforts to draw up blueprints, which were an essential aspect of Waterbury's permit application to the city. Wilson Decl. ¶ 9, dkt. 32-1. In denying

[4] State Farm also highlights that it promptly reengaged Mr. Lee's services in January 2024 after receiving CTL's report from Mr. Taylor. Unexplained by State Farm (or Waterbury, for that matter) is the six-month gap that preceded Mr. Lee's second inspection, which occurred in June 2024.

Mr. Young's request, however, State Farm again solicited input from Mr. Lee, who reiterated his opinion based on his visual inspection that further testing was not warranted. (State Farm has also cited Waterbury's apparent failure to designate "any municipal codes or regulations requiring [the requested] testing" as evidence that State Farm acted rationally. Dkt. 36 at 13.) As highlighted above, however, a reasonable jury could find that the internal inconsistency within Mr. Lee's initial report rendered State Farm's continued reliance on his opinion unreasonable, especially in light of State Farm's awareness that Waterbury required more conclusive concrete testing in order to prepare its permit application for the city. *See* dkt. 29-7 at 4; Wilson Decl. ¶ 14, dkt. 32-1 (describing how State Farm's decisions apropos of the concrete slab forced Waterbury to undertake a "substantially more complex permitting process," which entailed "obtaining additional architectural drawings and additional approvals that would not have been required has the full slab been removed at the outset").

**B. Culpable Intent**

As noted above, a plaintiff asserting a claim for breach of the duty of good faith and fair dealing must adduce evidence "of conscious wrongdoing." *Brandell*, 173 N.E.3d at 284. Poor judgment or mere negligence do not suffice. *Id.* Here, State Farm invokes its reliance upon Mr. Lee's opinions as well as Apex's refusal to turn over specific subcontractor bids as evidence of its continued good faith in processing Waterbury's insurance claim. Dkt. 30 at 20. Waterbury cannot establish State Farm's ill intent, State Farm argues, because it remained ready and willing to reconsider its determination in the event that Waterbury presented competing information. As discussed above, neither basis is persuasive or sufficient to demonstrate State Farm's entitlement to judgment as a matter of law.

To the contrary, Waterbury has adduced sufficient evidence from which a reasonable jury could conclude that State Farm acted in bad faith in the handling of Waterbury's insurance claim. Although State Farm's reliance upon Mr. Lee's initial assessment might well have been reasonable, a factfinder could infer State Farm acted in bad faith by disregarding a material (and glaring) inconsistency in Mr. Lee's report re: the color of the concrete slab and by relying upon Mr. Lee's findings to support its denial of Waterbury's requests for further testing.

Additional factual disputes remain regarding whether and to what extent State Farm understood that its refusal to sanction further concrete testing hindered Waterbury's efforts to obtain a demolition permit from the city. An August 16, 2023, email from Mr. Beghtel suggests that State Farm was on notice that the city "w[ould] likely require a building plan [to] be submitted prior to issuing a permit for the demo[lition]." Dkt. 29-7 at 4. The extent to which State Farm was also aware that its own recalcitrance exacerbated Waterbury's expenses in preparing its permit application remains unanswered by the record before us. However, Waterbury has adduced additional evidence that State Farm possessed the requisite mindset to support a theory of bad faith—specifically, the six-month gap between when State Farm received a copy of CTL's concrete test results in January 2024, which results proved that the concrete slab fell short of code requirements, and Mr. Lee's subsequent reassessment of the Property in June 2024. Waterbury argues that State Farm intentionally postponed Mr. Lee's second inspection until after demolition because State Farm anticipated that demolition activities would damage the slab and necessitate replacement. According to Waterbury, State Farm's preference for a post-demolition inspection was strategic, not investigative, as it allowed State Farm to postpone and delay covering the cost of demolishing the concrete slab until doing so was unavoidable.

Viewing the record in the light most favorable to Waterbury, a reasonable jury could conclude that State Farm breached its duty of good faith and fair dealing by delaying coverage for the concrete slab and by deferring to and overlooking unexplained discrepancies within Mr. Lee's report. In light of the training State Farm's employees receive on how to comply with the duty of good faith, *See* Barnes Dep. 52:10–65:6, dkt. 29-3, a factfinder could agree with Waterbury that State Farm consciously disregarded its obligation to treat Waterbury's interests in prompt and timely reconstruction as equal to its own. Because the record evidence reveals the existence of genuine disputes of material fact, summary judgment must and therefore shall be **denied**.

## CONCLUSION

For the reasons stated above, State Farm's Motion to Strike is hereby **GRANTED in part** and **DENIED in part**. Dkt. 38. Waterbury's surreply brief is hereby **STRICKEN** with regard to Section A, C, D, and E only. Dkt. 37.

State Farm's Motion for Partial Summary Judgment is hereby **DENIED**. Dkt. 29. This matter shall proceed accordingly.

IT IS SO ORDERED.

Date: 9/9/2026

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Edmund Leonard Abel
LEWIS WAGNER, LLP
eabel@lewiswagner.com

Eric C. McNamar
LEWIS WAGNER, LLP
emcnamar@lewiswagner.com

Michael L. Schultz
PARR RICHEY FRANDSEN PATTERSON KRUSE, LLP(Indianapolis)
mschultz@parrlaw.com